FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| U.S. BANK, N.A., Trustee for the Holders of the J.P. Morgan Mortgage Trust 2007-S3, *Plaintiff-Counter-Defendant-Appellant*, <br><br> v. <br><br> SOUTHERN HIGHLANDS COMMUNITY ASSOCIATION, *Defendant-Appellee*, <br><br> SFR INVESTMENTS POOL 1, LLC, *Defendant-Counter-Claimant-Cross-Claimant-Appellee*, <br><br> v. <br><br> NATIONSTAR MORTGAGE LLC; BANK OF AMERICA, NA, *Cross-Claim-Defendants-Appellants.* | No. 19-15918 <br><br> D.C. No. 2:15-cv-01484-KJD-GWF <br><br><br> ORDER CERTIFYING QUESTION TO THE NEVADA SUPREME COURT |

Filed June 3, 2021

Before:  Eugene E. Siler,[*] Sandra S. Ikuta, and Jacqueline
H. Nguyen, Circuit Judges.

Order

## SUMMARY[**]

### Nevada Foreclosure Law

The panel certified to the Nevada Supreme Court the following question:

> Whether, under Nevada law, an HOA's misrepresentation that its superpriority lien would not extinguish a first deed of trust, made both in the mortgage protection clause in its CC&Rs and in statements by its agent in contemporaneous arbitration proceedings, constitute slight evidence of fraud, unfairness, or oppression affecting the foreclosure sale that would justify setting it aside.

The panel also asked the Nevada Supreme Court to consider the related issue of what evidence a first deed of

---

[*] The Honorable Eugene E. Siler, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

trust holder must show to establish a causal relationship between a misrepresentation that constitutes unfairness under *Nationstar Mortg., LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon*, 133 Nev. 740 (2017), and a low sales price.

## ORDER

We ask the Nevada Supreme Court to resolve an important and open question of state law: what evidence constitutes "slight evidence of fraud, unfairness, or oppression" affecting a foreclosure sale that may be "sufficient to authorize the granting" of equitable relief, *Nationstar Mortg., LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon*, 133 Nev. 740, 741, 749 (2017) (quoting *Golden v. Tomiyasu*, 79 Nev. 503, 515 (1963)), when a homeowner's association (HOA) forecloses its superpriority lien on a residence and sells the residence at a foreclosure sale for a grossly inadequate sales price. Specifically in this case, does a mortgage protection clause in the HOA's covenants, conditions, and restrictions (CC&Rs), along with misrepresentations about the HOA's superpriority lien made to the lender in a separate proceeding, constitute such evidence?

The answer to that question is determinative here, and the decisions of the Nevada Supreme Court do not provide controlling precedent. *See* Nev. R. App. P. 5(a).

"We invoke the certification process only after careful consideration and do not do so lightly." *Kremen v. Cohen*, 325 F.3d 1035, 1037 (9th Cir. 2003). In deciding whether to certify this question to the Nevada Supreme Court, we consider: "(1) whether the question presents 'important public

policy ramifications' yet unresolved by the state court; (2) whether the issue is new, substantial, and of broad application; (3) the state court's caseload; and (4) 'the spirit of comity and federalism.'"    *Murray v. BEJ Mins., LLC*, 924 F.3d 1070, 1072 (9th Cir. 2019) (en banc) (quoting *Kremen*, 325 F.3d at 1037–38).

The question in this case has "important public policy ramifications" and is "of broad application" given that Nevada HOAs continue to initiate foreclosures based on the state's superpriority lien statue.  *See* NRS § 116.3116; *see, e.g.*, *Bank of Am., N.A. v. Hernandez*, No. 2:17-CV-03108 RFB CWH, 2019 WL 1442184, at \*4 (D. Nev. Mar. 31, 2019) (involving an HOA foreclosure sale based on a superpriority lien in December 2016, after the Nevada Legislature amended the HOA superpriority statute in 2015); *see also* Eli Segall, *Despite Foreclosure Freeze, HOAs Sending Default Notices*, Las Vegas Review-Journal, June 11, 2020.[1]  In the spirit of comity and federalism accorded to state courts to decide important issues of state law, *see Murray*, 924 F.3d at 1071–72, we therefore respectfully certify this question of law to the Nevada Supreme Court under Rule 5 of the Nevada Rules of Appellate Procedure. Per Rule 5(c)(1)–(6) of the Nevada Rules of Appellate Procedure, we provide the following information for the consideration of the Nevada Supreme Court.

---

[1]    Available at https://www.reviewjournal.com/business/ housing/despite-foreclosure-freeze-hoas-sending-default-notices-2050802/ (last accessed May 14, 2021).

I

This case is one of a number of cases from Nevada involving HOAs' foreclosures of their superpriority liens on properties in common interest communities. We begin by describing the Nevada Supreme Court's rulings on (1) whether these superpriority liens extinguish first deeds of trust and (2) whether the foreclosure of these liens can be set aside under equitable principles.

A

1

Since 1991, the Nevada legislature has allowed HOAs in Nevada to impose liens for past-due assessments on units subject to their CC&Rs. *See* NRS § 116.3116.[2] Subsection 1 of NRS § 116.3116 allows the HOA to place a lien on its homeowners' residences for any delinquent HOA assessment. *See* NRS § 116.3116(1) (2012). Subsection 2 gives that HOA lien priority over most other liens. *See* NRS § 116.3116(2) (2012). The lien has two portions. The portion of the lien securing nine months of HOA dues, maintenance, and nuisance-abatement charges has priority over a first deed of trust. *See* NRS § 116.3116(2)(b) (2012). This portion is referred to as the "superpriority" lien, while the remainder of the lien is referred to as the "subpriority" lien. *See SFR Invs. Pool 1 v. U.S. Bank*, 130 Nev. 742, 754 (2014), *superseded by statute on other grounds as stated in Saticoy Bay LLC Series 9050 W Warm Springs 2079 v. Nev. Ass'n Servs.*, 135 Nev. 180, 180 (2019). In order to encourage lenders to finance the

---

[2] The pertinent text of NRS § 116.3116 (2012) at the time of the foreclosure sale in this case is set out in the Appendix.

sale of a residence within a common interest community, HOAs frequently included mortgage protection clauses in their CC&Rs. As with the mortgage protection clause in this case, such clauses typically state that the HOA would subordinate its superpriority lien to the bank's first deed of trust. *See, e.g.*, *U.S. Bank, N.A., Tr. for Banc of Am. Funding Corp. Mortg. Pass-Through Certificates, Series 2005-F v. White Horse Ests. Homeowners Ass'n*, 987 F.3d 858, 864 (9th Cir. 2021) (*White Horse*).

After the 2008 economic downturn, when HOAs began initiating foreclosures of their superpriority liens to recover unpaid assessments, it was an open question whether a superpriority lien extinguished the first deed of trust on a property. *See SFR*, 130 Nev. at 749. Before 2014, some courts held that a superpriority lien only established a payment priority over the first deed of trust. *See id.* at 747–48 (citing cases). In other words, the superpriority portion of the lien had to be paid when the first deed of trust was foreclosed, but it did not extinguish the first deed of trust. *See Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222, 1225 (D. Nev. 2013). Because of the uncertainty regarding whether HOA foreclosures extinguished first deeds of trust, investors bought residences at HOA foreclosure sales for roughly the amount of the HOA's liens. *See id.* at 1226. As one federal district court explained, "[i]f investors believed that HOA foreclosures extinguished first mortgages, homes sold at HOA foreclosure sales would sell for significant fractions of their fair market value, not for the tiny fractions of their fair market value approximating the HOA lien at which HOA-foreclosed homes invariably sell." *Id.* This behavior indicated that "the real estate community in Nevada clearly underst[ood] the statutes" as establishing only a payment priority. *Id.* It was

not until 2014, two years after the foreclosure in this case, that the Nevada Supreme Court authoritatively ruled that an HOA's foreclosure of the superpriority component of the lien would extinguish a first deed of trust. *See SFR*, 130 Nev. at 743.

2

After this ruling, lenders began arguing that HOA foreclosure sales should be set aside under equitable principles. *See, e.g.*, *U.S. Bank, N.A. v. Queen Victoria #1720-104 NV W. Servicing LLC*, No. 2:13-CV-01679-GMN, 2015 WL 419836, at *1 (D. Nev. Jan. 5, 2015). They argued that under longstanding Nevada Supreme Court precedent, courts have "the power, in an appropriate case, to set aside a defective foreclosure sale on equitable grounds." *See Shadow Wood Homeowners Ass'n v. N.Y. Cmty. Bancorp., Inc.*, 132 Nev. 49, 58 (2016) (citing *Golden*, 79 Nev. at 514). *Golden* first set forth the two-prong test for analyzing this issue: a foreclosure sale may be set aside where there is "inadequacy of price" along with "proof of some element of fraud, unfairness or oppression as accounts for and brings about the inadequacy of price." 79 Nev. at 504; *see also Long v. Towne*, 98 Nev. 11, 13 (1982) ("Mere inadequacy of price is not sufficient to justify setting aside a foreclosure sale, absent a showing of fraud, unfairness or oppression.").

*Shadow Wood* confirmed that *Golden* applied in the HOA foreclosure sale context. *See Shadow Wood*, 132 Nev. at 58. In *Shadow Wood*, the HOAs argued that *Golden* did not apply because, in their view, all post-sale challenges to foreclosure sales were barred under NRS § 116.31166. *Id.* at 51. *Shadow Wood* held that this statute did not disrupt a court's equitable power to consider quiet title actions. *Id.* at 57. *Shadow Wood*

then reiterated the two-part test from *Golden*:  to set aside an HOA foreclosure sale on equitable grounds, the lender must show that "an association sold a property at its foreclosure sale for an inadequate price" and "there must also be a showing of fraud, unfairness, or oppression."  *Id.* at 60. Considering the second prong of this test, *Shadow Wood* indicated that if communications from the HOA and its agents "rose to the level of misrepresentations and nondisclosure" which prevented the lender's ability to cure the default, they "might support setting aside the sale."  *Id.* at 62.

Soon after *Shadow Wood* affirmed that *Golden* applied to HOA foreclosures, the Nevada Supreme Court further clarified how the test applies in this context in *Shadow Canyon*, 133 Nev. at 741.  *Shadow Canyon* suggested that the two-part test included a sliding scale: "where the inadequacy of the price is great, a court may grant relief based on *slight* evidence of fraud, unfairness, or oppression."  *Id.* (emphasis added) (citing *Golden*, 79 Nev. at 514–15).  Again focusing on the second part of the test, *Shadow Canyon* provided a nonexhaustive list of "irregularities that may rise to the level of fraud, unfairness, or oppression."  *Id.* at 749 n.11.  One such irregularity was "an HOA's representation [to a lender] that the foreclosure sale will not extinguish the first deed of trust."  *Id*.  In making this observation, the Nevada Supreme Court relied on a case from a federal district court in Nevada, *ZYZZX2 v. Dizon*, No. 2:13-cv-1307, 2016 WL 1181666, at *5 (D. Nev. Mar. 25, 2016).

*Dizon* applied the two-part test in *Shadow Wood* to set aside an HOA foreclosure sale.  *Id.* at *3–5.  With respect to the second prong of the test, *Dizon* focused on the HOA's mortgage protection clause in its CC&Rs and a letter that the

HOA sent to the lender and other interested parties. *Id.* at *5. Both communications misrepresented that the HOA's foreclosure would not extinguish the first deed of trust. *Id.* According to *Dizon*, this information "was legally inaccurate and resulted in an unreasonably low sale price" because "[h]igher bidders were dissuaded from offering a commercially reasonable price based on the assertions that they would take title subject to the mortgage loan." *Id. Dizon* concluded that this "defect in sale" satisfied the unfairness prong "under the two part test laid out in *Shadow Wood*." *Id.*

Since *Shadow Wood* and *Shadow Canyon*, the Nevada Supreme Court has provided little additional guidance on when a misrepresentation constitutes unfairness under the second prong of the *Shadow Wood* test. The Nevada Supreme Court has published two opinions applying the *Shadow Wood* test, but these opinions do not address whether misrepresentations are sufficient to satisfy the unfairness prong. *See Res. Grp., LLC as Tr. of E. Sunset Rd. Tr. v. Nev. Ass'n Servs., Inc.*, 135 Nev. 48, 55–56 (2019) (holding that a lender's lack of diligence in the late delivery of a check for the superpriority amount was not "fraud, unfairness or oppression that affected the sales price") (cleaned up); *SFR Invs. Pool 1, LLC v. U.S. Bank, N.A. as Tr. for Certificate Holders of Wells Fargo Asset Sec. Corp., Mortg. Pass-Through Certificates, Series 2006-AR4*, 135 Nev. 346, 351–52 (2019) (*Copper Ridge*) (holding that an HOA's foreclosure sale in violation of a property owner's automatic bankruptcy stay, which caused the lender to delay its own foreclosure sale, was not fraud, unfairness, or oppression affecting the sale because the lender did not provide evidence that the bankruptcy sale violation caused a lower price).

The Nevada Supreme Court has issued unpublished opinions addressing claims that an HOA's misrepresentations constitute fraud, unfairness, or oppression affecting the sale, but these cases do "not establish mandatory precedent," Nev. R. App. P. 36(c)(2), and do not explain the distinction between misrepresentations that constitute unfairness affecting the sale and those that do not.  For example, the Nevada Supreme Court held that a mortgage protection clause in an HOA's CC&Rs did not meet this requirement, *U.S. Bank Nat'l Ass'n as Tr. for Benefit of HarborView 2005–08 v. Vistas Homeowners Ass'n*, 432 P.3d 191, 2018 WL 6617731, at *1 (Nev. 2018) (unpublished), and distinguished *Dizon* on the ground that "in addition to the CC&Rs' covenant, the HOA sent a letter to the deed of trust beneficiary affirmatively misrepresenting to the beneficiary that it would not need to take any action to protect its deed of trust." *Id.* at *1 n.2.  By contrast *Lahrs Family Trust v. JPMorgan Chase Bank, N.A.* held that a pre-foreclosure letter to the lender "constitute[d] unfairness because it gives the impression that a purchase would remain subject to the first DOT on the property . . . [which] produces a lower bid price, because any buyer would take subject to the first deed of trust." 446 P.3d 1157, 2019 WL 4054161, at *2 (Nev. 2019) (unpublished).

To summarize, the question of whether foreclosure of a superpriority lien extinguished a first deed of trust was unsettled prior to *SFR*.  Once *SFR* ruled that such a foreclosure extinguished the first deed of trust, *SFR*, 130 Nev. at 743, lenders argued that courts should equitably set aside these sales based on misrepresentations that the HOAs and their agents made to the lenders prior to the foreclosures, *see, e.g.*, *Queen Victoria*, 2015 WL 419836, at *1.  Although the Nevada Supreme Court has held that such equitable set asides

are permissible, *Shadow Wood*, 132 Nev. at 58, there is no binding guidance on when a court can equitably set aside a sale based on an HOA's misrepresentation in a situation such as the one before us here.

## B

This uncertainty over when courts may set aside HOA foreclosure sales based on fraud, unfairness, or oppression affecting the sale serves as the backdrop for the facts of this case.  In March 2007, Jacqueline Hagerman executed a deed of trust on the property located at 10702 La Crescenta Court, Las Vegas, Nevada 89141 (the La Crescenta property) to secure a loan for $444,000.  The deed of trust named Mortgage Electronic Registration Systems, Inc. (MERS), acting solely as a nominee for the lender and its successors and assigns, as the beneficiary and Countrywide Home Loans, Inc. as the lender.  In 2011, MERS assigned its interest to Bank of America, N.A, which made a further assignment to U.S. Bank, N.A. in 2013.

The La Crescenta property is subject to the CC&Rs of the Southern Highlands Community Association (Southern Highlands HOA).  The CC&Rs require residents to pay annual assessments, and gives the Southern Highlands HOA a right to impose a lien for unpaid assessments against the property.  As to the priority of that lien, the CC&Rs state that "[t]he lien of assessments, including interest and costs, shall be subordinate to the lien of any first Mortgage upon the Unit."

Hagerman failed to make assessment payments owed to the Southern Highlands HOA.  In July 2010, the Southern Highlands HOA's agent, Alessi & Koenig, LLC (Alessi),

recorded a notice of delinquent assessment lien against the La Crescenta property.  A few months later, Alessi recorded a notice of default and election to sell based on the lien, and subsequently recorded a notice of trustee's sale, noticing a September 2012 foreclosure sale.  SFR Investments Pool I, LLC (SFR) purchased the La Crescenta property at the foreclosure sale for $8,200.  At the time of the sale, the property had a fair market value of $293,000.

While the Southern Highlands HOA foreclosed on the La Crescenta property, Southern Highlands and Alessi were engaged in litigation with U.S. Bank's predecessor-in-interest in another assessment lien case, *BAC Home Loans Servicing, LP v. Stonefield II HOA*, 2:11-cv-00167-JCM-RJJ, 2011 WL 2976814 (D. Nev. July 21, 2011) (the *Stonefield* litigation). The *Stonefield* litigation involved a dispute between U.S. Bank's predecessor-in-interest, several homeowner's associations, including the Southern Highlands HOA, and their agents, including Alessi.  The central issue in the litigation was whether a beneficiary of a first deed of trust on a property subject to CC&Rs could tender payment for the superpriority amount of the HOAs' liens *before* the HOAs foreclosed their liens.  The dispute was subject to arbitration. *See Stonefield*, 2011 WL 2976814, at *1–2.  In the 2012 arbitration proceedings, Alessi accepted the view that a HOA's superpriority lien did not attach until the lender foreclosed on the first deed of trust.  This assumption reflected the uncertain state of the law prior to *SFR*, where, as discussed above, many courts held that the superpriority lien merely established an HOA's right to payment.  *See SFR*, 130 Nev. at 747–48. In light of this background principle, the arbitrator concluded that the beneficiary of the first deed of trust could not tender a payment specifically targeted to pay off the superpriority portion of the lien because the HOA did

not have to accept a payment before its superpriority lien attached.

After the Southern Highlands HOA foreclosed its lien on the La Crescenta property (and after the *Stonefield* arbitration), U.S. Bank filed a complaint against the Southern Highlands HOA and SFR, seeking to quiet title to the La Crescenta property.  The complaint asserted four claims: quiet title; breach of NRS § 116.1113; wrongful foreclosure; and injunctive relief.  SFR filed a counterclaim for quiet title. The parties filed cross-motions for summary judgment on all claims.

In March 2019, the district court entered summary judgment in favor of the Southern Highlands HOA and SFR. As part of its ruling, the district court held that there was no fraud, unfairness, or oppression affecting the sale, and therefore it should not be equitably set aside under *Shadow Canyon*.[3]   The court acknowledged that an HOA's representation that a foreclosure sale will not extinguish the first deed of trust can rise to the level of fraud, unfairness, or oppression sufficient to set-aside the sale.  But the district court concluded that neither the mortgage protection clause in the CC&Rs nor Alessi's representation in the *Stonefield* litigation rose to that level, because neither was a "direct misrepresentation" of the Southern Highlands HOA lien's priority.

---

[3] The court also held that NRS § 116.3116 (creating the superpriority lien for HOA assessments) was not facially unconstitutional under the Due Process Clause of the Fourteenth Amendment.  The parties no longer dispute this point.

II

On appeal, U.S. Bank argues that the district court erred in granting summary judgment in favor of SFR and the Southern Highlands HOA because, as a matter of law, the sales price of the La Crescenta property was grossly inadequate and fraud, unfairness, or oppression affected the sale. U.S. Bank argues that the sales price was grossly inadequate because SFR bought the La Crescenta property for roughly three percent of its fair market value. Next, it contends that the mortgage protection clause in the CC&Rs and Alessi's misrepresentations to its predecessor-in-interest in the *Stonefield* litigation qualify as evidence of unfairness affecting the sale.

We start with the rule from *Golden*, reaffirmed in *Shadow Wood*, that an HOA's "nonjudicial foreclosure sale may be set aside . . . upon a showing of grossly inadequate price plus fraud, unfairness, or oppression." *Shadow Wood*, 132 Nev. at 56 (cleaned up) (citing *Long*, 98 Nev. at 13); *see also Golden*, 79 Nev. at 514. As a preliminary matter, we conclude that the sales price here was grossly inadequate. *Shadow Wood* dictates that "a court is warranted in invalidating a sale where the price is less than 20 percent of fair market value." *Id.* at 60 (quoting Restatement (Third) of Prop.: Mortgages § 8.3 cmt. b (1997)). Because the sales price here of approximately three percent of fair market value sits well under 20 percent, we hold that it is grossly inadequate. *See id.*

We need the Nevada Supreme Court's guidance, however, on the second question: whether the misrepresentations made by the HOA and its agent in this case, specifically the mortgage protection clause in the CC&Rs and Alessi's

representation in arbitration that the superpriority lien would not extinguish the first deed of trust, constitute sufficient evidence of fraud, unfairness, or oppression affecting the sale so as to justify setting it aside.  Both the HOA and U.S. Bank argue that the Nevada Supreme Court's legal framework supports their position.  The HOA contends that the Nevada Supreme Court has never held in a published opinion that a mortgage protection clause in an HOA's CC&Rs is sufficient evidence of fraud, unfairness, or oppression, and that the Nevada Supreme Court's unpublished opinions are to the contrary.  Further buttressing the HOA's view, we held in an opinion published after argument in this case that a mortgage protection clause alone does not "constitute fraud, unfairness, or oppression" affecting the sale.  *White Horse*, 987 F.3d at 867.   The HOA also argues that U.S. Bank has not presented any evidence that any misrepresentation actually resulted in a lower sales price. *See Res. Grp.*, 135 Nev. at 55.

U.S. Bank, by contrast, contends that the Nevada Supreme Court has indicated that an HOA's misrepresentations can rise to the level of unfairness and satisfy the second prong of the test. *See Shadow Wood*, 132 Nev. at 62.  Further, U.S. Bank argues, *Dizon* (cited with approval in *Shadow Canyon*) makes clear that a mortgage protection clause, along with another misrepresentation like the statements in the *Stonefield* litigation that the superpriority lien would not attach until the lender foreclosed, are sufficient.  Although the *Stonefield* arbitration did not concern the La Crescenta property, Alessi's position in that litigation was arguably a "known policy" applicable to all properties. *See 7510 Perla Del Mar Ave Trust v. Bank of Am., N.A.*, 136 Nev. 62, 66–67 (2020) (en banc) (holding that when an HOA servicer "had a known policy" of refusing to accept tenders of less than the full lien amount, a lender could

be excused from making tender, even though the "known policy" stemmed from unrelated cases). Finally, at the time of the foreclosure sale, it was an open question whether foreclosure of an HOA lien would extinguish a first deed of trust. *See SFR*, 130 Nev. at 747–48. In light of this uncertainty, it would be reasonable to purchase residences at such foreclosure sales at amounts roughly approximating the value of the HOA liens, due to the risk that the first deed of trust would continue to encumber the properties. *See Bayview Loan*, 962 F. Supp. 2d at 1226. In that context, U.S. Bank argues, the misrepresentations of the HOA and its agents that the first deed of trust would survive the foreclosure sale would necessarily affect the sale.

We need the Nevada Supreme Court's guidance to resolve this dispute. As explained above, the cases published since *Shadow Wood* and *Shadow Canyon* have not assessed whether HOAs' common misrepresentations in their mortgage protection clauses, or elsewhere, constitute unfairness sufficient to set aside the sale. *See Copper Ridge*, 135 Nev. at 352; *Res. Grp.*, 135 Nev. at 55–56. Moreover, the unpublished cases provide little direction to help us discern when misrepresentations rise to the level of unfairness affecting the sale, and when they do not. *Compare HarborView*, 2018 WL 6617731, at *1 n.2, *with Lahrs*, 2019 WL 4054161, at *2.

## III

Accordingly, we respectfully certify the following question to the Nevada Supreme Court:

> Whether, under Nevada law, an HOA's misrepresentation that its superpriority lien

would not extinguish a first deed of trust, made both in the mortgage protection clause in its CC&Rs and in statements by its agent in contemporaneous arbitration proceedings, constitute slight evidence of fraud, unfairness, or oppression affecting the foreclosure sale that would justify setting it aside.

In answering this question, we also ask the Nevada Supreme Court to consider the related issue of what evidence a first deed of trust holder must show to establish a causal relationship between a misrepresentation that constitutes unfairness under *Shadow Canyon* and a low sales price. *See Res. Grp.*, 135 Nev. at 55.

IV

The Clerk of Court is hereby directed to transmit to the Nevada Supreme Court, under official seal of the Ninth Circuit, a copy of this order and request for certification and all relevant briefs and excerpts of record. Submission of this case is withdrawn and the case will be submitted following receipt of the Nevada Supreme Court's opinion on the certified question or notification that it declines to answer the certified question. The Clerk is directed to administratively close this docket pending further order. The panel shall retain jurisdiction over further proceedings in this court. The parties shall notify the Clerk of this court within one week after the Nevada Supreme Court accepts or rejects

certification.  In the event the Nevada Supreme Court grants certification, the parties shall notify the Clerk within one week after the Court renders its opinion.

**QUESTION   CERTIFIED;   PROCEEDINGS STAYED.**

Sandra S. Ikuta
Circuit Judge

Appendix

At the time of the foreclosure sale in this case, NRS § 116.3116 (2012) read, in pertinent part:

> 1. The association has a lien on a unit for any construction penalty that is imposed against the unit's owner pursuant to NRS 116.310305, any assessment levied against that unit or any fines imposed against the unit's owner from the time the construction penalty, assessment or fine becomes due. Unless the declaration otherwise provides, any penalties, fees, charges, late charges, fines and interest charged pursuant to paragraphs (j) to (n), inclusive, of subsection 1 of NRS 116.3102 are enforceable as assessments under this section. If an assessment is payable in installments, the full amount of the assessment is a lien from the time the first installment thereof becomes due.
>
> 2. A lien under this section is prior to all other liens and encumbrances on a unit except:
>
> (a) Liens and encumbrances recorded before the recordation of the declaration and, in a cooperative, liens and encumbrances which the association creates, assumes or takes subject to;
>
> (b) A first security interest on the unit recorded before the date on which the assessment sought to be enforced became

delinquent or, in a cooperative, the first security interest encumbering only the unit's owner's interest and perfected before the date on which the assessment sought to be enforced became delinquent; and

(c) Liens for real estate taxes and other governmental assessments or charges against the unit or cooperative.

The lien is also prior to all security interests described in paragraph (b) to the extent of any charges incurred by the association on a unit pursuant to NRS 116.310312 and to the extent of the assessments for common expenses based on the periodic budget adopted by the association pursuant to NRS 116.3115 which would have become due in the absence of acceleration during the 9 months immediately preceding institution of an action to enforce the lien, unless federal regulations adopted by the Federal Home Loan Mortgage Corporation or the Federal National Mortgage Association require a shorter period of priority for the lien.  If federal regulations adopted by the Federal Home Loan Mortgage Corporation or the Federal National Mortgage Association require a shorter period of priority for the lien, the period during which the lien is prior to all security interests described in paragraph (b) must be determined in accordance with those federal regulations, except that notwithstanding the provisions of the federal regulations, the period of priority

for the lien must not be less than the 6 months immediately preceding institution of an action to enforce the lien. This subsection does not affect the priority of mechanics' or materialmen's liens, or the priority of liens for other assessments made by the association.

## Supplemental Material

Pursuant to Rule 5 of the Nevada Rules of Appellate Procedure, we include here the designation of the parties who would be the appellants and appellee in the Nevada Supreme Court, as well as the names and addresses of counsel.

For Appellants U.S. Bank, N.A., Trustee for the Holders of the J.P. Morgan Mortgage Trust 2007-S3, Nationstar Mortgage LLC, and Bank of America, NA:

Richard Aaron Chastain
Bradley Arant Boult Cummings LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203

Stephen Colmery Parsley
Bradley Arant Boult Cummings LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203

Ariel Edward Stern
Akerman LLP
1635 Village Center Circle
Suite 200
Las Vegas, NV 89134

Donna M. Wittig
Akerman LLP
1635 Village Center Circle
Suite 200
Las Vegas, NV 89134

For Appellee Southern Highlands Community Association:

Kurt R. Bonds
Alverson Taylor & Sanders
6605 Grand Montecito Parkway
Suite 200
Las Vegas, NV 89149

LeAnn Sanders
Alverson Taylor & Sanders
6605 Grand Montecito Parkway
Suite 200
Las Vegas, NV 89149

For Appellee SFR Investments Pool 1, LLC:

Diana S. Ebron
Kim Gilbert Ebron
7625 Dean Martin Drive
Suite 110
Las Vegas, NV 89139

Jacqueline A. Gilbert
Kim Gilbert Ebron
7625 Dean Martin Drive
Suite 110
Las Vegas, NV 89139

Jason Martinez
Kim Gilbert Ebron
7625 Dean Martin Drive
Suite 110
Las Vegas, NV 89139

Karen Hanks
Messner Reeves, LLP
8945 West Russell Road
Suite 300
Las Vegas, NV 89148